## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **KELLEY LENAHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action File No.** |
| | ) | _____ |
| **FRC BALANCE LLC dba TRUE** | ) | |
| **FOOD KITCHEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Kelley Lenahan ("Lenahan") brings this action for:

i)    race discrimination, race harassment, and retaliation in violation of the

    Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil

    Rights Act of 1991 ("Section 1981");

ii)    intentional infliction of emotional distress in violation of Georgia tort

    law;

iii)    negligent retention in violation of Georgia tort law; and

iv)    breach of fiduciary duty in violation of Georgia tort law.

Plaintiff seeks equitable relief; general, compensatory, and punitive damages; costs;

and attorneys' fees, and other appropriate relief for the injuries she suffered from the

unlawful conduct of FRC Balance LLC ("FRC LLC") dba True Food Kitchen.

## Parties

### 1.

Plaintiff Lenahan is currently a resident and citizen of the State of Georgia.

### 2.

Defendant FRC LLC is an Arizona limited liability company with its principal office address located at 4455 E. Camelback Road, Suite A1115, Phoenix, Arizona 85018. FRC LLC regularly conducts business within the State of Georgia, including as related to the facts set forth in this Complaint. FRC LLC is registered to do business within the State of Georgia. The Georgia registered agent for FRC LLC is CT Corporation System, 289 S. Culver St. Lawrenceville, Georgia 30041.

### 3.

FRC LLC owns and operates restaurants under the name of True Food Kitchen ("TFK") with TFK restaurants located and operating in the Northern District of Georgia.

## Jurisdiction and Venue

### 4.

This Court has original jurisdiction over Plaintiff's Section 1981 claims and

Georgia tort claims pursuant to 28 U.S.C. §§ 1331, § 1343, and § 1367.

**5.**

Venue in this district and division is proper under 28 U.S.C. § 1391 as Defendants reside and maintain a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct of Defendant occurred in this district and division.

**6.**

This Court has Supplemental Jurisdiction over pendant state law claims under 28 U.S.C. § 1367 because the pendant claims arise from the same nucleus of operative facts as the federal claims in this Complaint.

**7.**

Plaintiff is a citizen of the United States and is entitled to bring actions of this nature and type. Plaintiff is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

**8.**

At all times relevant to this action, Plaintiff was contractually engaged as an employee of Defendant True Food Kitchen ("TFK").

**9.**

Plaintiff is a Caucasian female.

**10.**

At all times relevant to this Complaint, Defendant employed multiple

employees throughout the United States.

**Factual Allegations**

**11.**

On April 9, 2019, Lenahan received an offer "Offer" of employment from

TFK to work as an Assistant General Manager ("AGM") position at "True Food

Kitchen Atlanta."  The Offer further provided,

Effective Date: Your start date is 04/17/2019.

Compensation: … annual salary of $85,000 …

Benefits: … a competitive complement of benefits (including medical,

dental, vision, life insurance, 401 (k) savings & retirement, and paid time off

plans) that you are eligible to participate in subject to the requirements of

such plans.

Bonus: … eligible to participate in the Restaurant Management Bonus Plan:

… based on the restaurant's performance against critical measure that drive

the success of our business.

The Offer was signed by Danielle Berman on behalf of TFK. The Offer included,

"This letter forms the complete and exclusive statement of employment between

4

you and True Food Kitchen."  A footer of the Offer contained the following address: "4455 Camel Back Rd., Ste. A-115, Phoenix, Az 35081."

**12.**

On April 17, 2029, Lenahan began her TFK training at the TFK restaurant in Nashville, Tennessee.

**13.**

On May 17, 2019, Lenahan transferred back to the TFK restaurant located at Lenox Square, Atlanta, Georgia ("TFK Lenox") to complete her training.

**14.**

Following the completion of her training on June 2, 2019, Lenahan continued to work at TFK Lenox as an AGM.

**15.**

Reed Bowlby worked as the TFK's Regional Manager responsible for TFK restaurants in certain Southeastern states including Georgia, Tennessee, and Florida. In August or September 2019, Bowlby commented to Lenahan that TFK had never opened a new store with an entirely new team.

**16.**

In September 2019, Bowlby offered Lenahan the position of General Manager at a new TFK restaurant to be located in Alpharetta, Georgia ("TFK Alpharetta").

**17.**

By September 27, 2019, TFK had selected Chef Adam Rowles, AGM Justin Rusch, and Sous Chef Meg Lipari as part of the new management team for TFK Alpharetta. While wrapping up responsibilities at TFK Lenox, Rowles, Rusch, and Lepari each commented how happy they were to leave the negative, passive-aggressive environment at TFK Lenox

**18.**

On September 30, 2019, Lenahan and her new management team reported to TFK Alpharetta to begin preparing for the opening.

**19.**

During the month of October, Lenahan and the rest of the management team prepared for the new opening scheduled for November 6, 2019. The primary hiring for most employees at TFK Alpharetta would occur during the month of October.

**20.**

Although TFK intended to open TFK Alpharetta with a full management team consisting of a general manager, an assistant general manager, and two assistant managers, TFK failed to provide a full management team. Bowlby had hired Anna Bailey and Russell Hurn to work as the assistant managers, but their training at other TFK restaurants prevented their arrival at TFK Alpharetta until

closer to the opening.

**21.**

During October, TFK sent a team to help prepare for the TFK Alpharetta opening. The team included Eddie Talbot, a trainer, and Victoria Perez, temporary assistant manager. Although lacking a full management team, Lenahan and her team properly prepared and moved toward the opening.

**22.**

On October 24 or 25, Reed Bowlby relayed to Lenahan that someone called him and claimed that Lenahan had belittled someone. Bowlby would not identify the alleged caller. Bowlby asked Lenahan if "[she] could handle [the opening]?" Lenahan assured him that she could handle the opening.

**23.**

During the October 24 or 25 call with Lenahan, Bowlby also stated that the caller had claimed that Lenahan had discussed quitting. Lenahan assured Bowlby that she never said that and had no intention of quitting. Again, Bowlby would not identify the caller.

**24.**

On Wednesday, November 6, 2019, TFK Alpharetta opened as scheduled.

**25.**

On Tuesday, November 12, 2019, AGM Justin Rusch received a text from Bowlby asking for a private conversation. When Justin returned from his call with Bowlby, Rusch told Lenahan that the corporate trainer, Eddie Talbot, had reported that Lenahan had spoken harshly to an employee. This incident was the result of a server who had barged into a manager's meeting being conducted by Lenahan. Lenahan told the server, "Not now." At the time, Lenahan was encouraging the other managers to be patient and trust that everyone's schedules would lighten up. (At the time, everyone was working six days per week.)

**26.**

In the November 12, 2019 conversation, Rusch also told Lenahan that Bowlby had asked him (Rusch) whether Lenahan or Hurn should be terminated.

**27.**

As the store continued its November opening, Bowlby continued to communicate directly with AGM Rusch about various matters. Other than the October 24 or 25 call, Bowlby never spoke directly to Lenahan about her October performance.

**28.**

On Wednesday, November 13, 2019, and after learning about Bowlby's

direct conversations with Rusch, Lenahan drafted and submitted a two-page letter to True Food Kitchen's Chief People Officer, Peggy Rubenzer. In the letter, Lenahan described Bowlby's private conversation with Rusch in which Bowlby discussed Lenahan's performance and whether Hurn or Lenahan should be fired from TFK. In her letter, Lenahan also described the abusive and offensive conduct of other employees and then posed the question,

> "Why is all of this behavior seemingly acceptable when my signaling
> to an employee that she has mis-stepped be so off-putting that it
> warranted a phone call to my AGM?
> "During the night and this morning I was ill so I am not in the
> restaurant today. My hope is to have a conversation with you or
> someone else for advice and next steps…"

**29.**

Ms. Rubenzer responded to Lenahan's letter saying she wanted to talk with Lenahan and scheduled a meeting time.

**30.**

At approximately 11:30 am on November 15, 2019, Lenahan and Rubenzer discussed the content of Lenahan's letter. Rubenzer confirmed that the behavior of other supervising employees was unacceptable but could not discuss specifics.

When Lenahan raised Bowlby's private conversations with Rusch, Rubenzer suggested that Lenahan and Bowlby discuss the matter.

**31.**

Following the 11:30 am call between Lenahan and Rubenzer, Bowlby announced a three-way call among Lenahan, TFK HR Director Josh Sequin, and Bowlby. For the first time, Bowlby included Lenahan while discussing concerns about Lenahan's performance. Bowlby never explained why he did not raise the issues directly with Lenahan or why he spoke directly with Rusch to the exclusion of Lenahan. Although Lenahan raised the question with Rubenzer in Lenahan's earlier conversation with Rubenzer, neither Sequin nor Bowlby addressed why TFK overlooked the abusive conduct of other employees. At the end of the call, Bowlby and Sequin announced that they would prepare a performance improvement plan for Lenahan.

**32.**

As of Friday, November 15, 2019, the TFK Alpharetta restaurant had been open ten days.

**33.**

On Saturday, November 23, 2019, Bowlby presented to Lenahan a 30-Day Performance Improvement Plan ("PIP"). During Bowlby's brief conversation with

Lenahan, Bowlby again mentioned Lenahan's alleged belittling of a staff member but did not identify the person who made the complaint. Bowlby never provided any documentation to supporting the items addressed in the PIP. To date, TFK Alpharetta had been open less than three weeks.

**34.**

In December, Hurn's performance continued to be extremely problematic. Lenahan and other managers became concerned about Hurn who appeared to be under the influence of a drug or alcohol. Hurn's functions included closing the restaurant which required post-closing cleaning, financial administration, and other tasks that prepared the restaurant for the next day's opening. Hurn often failed to clean the restaurant and properly calculate end-of-day cash counts. Lenahan shared with Bowlby Hurn's conduct and apparent gross mishandling or miscalculation of cash. Bowlby did not take any action.

**35.**

In January 2020, Lenahan learned of another alleged complaint directed towards her. According to Bowlby, someone had accused Lenahan of using the word "baboon" in a group line up. Bowlby and TFK refused to disclose the alleged accuser. Lenahan later remembered addressing a group of employees at TFK Alpharetta but used the word "buffoon." After learning of the alleged complaint,

Lenahan asked Andrea Cajuste, a restaurant employee, if she heard "baboon" or "buffoon." Cajuste said that she heard "buffoon." Once again, neither Bowlby nor any other TFK representative discussed the matter with Lenahan or investigated the apparent confusion.

## 36.

In January 2020, Lenahan discharged a female server for creating a hostile work environment. Upon her departure and in front of Chef Rowles, the discharged employee called Lenahan a "a white racist bitch." A week or so later, the discharged employee called the restaurant looking for her paycheck. When Lenahan came to the phone, the discharged server again called Lenahan "a white racist bitch" and hung up. At the end of the conversation, Lenahan reported the call to Bowlby and TFK HR.

## 37.

In another January 2020 incident, Chef Rowles discharged a pregnant African American female due to poor performance, poor attitude, and attendance issues. During her employment, the employee often referred to her "white managers …" On information and belief, the employee was rehired when she threatened to file an EEOC charge. Chef Rowles and other managers at TFK Alpharetta were amazed that Bowlby and TFK would reinstate the African

American female given her policy violations, video evidence, and the objections of her manager.

**38.**

On February 10, 2020, Bowlby met with Lenahan at TFK Alpharetta and stated that complaints about her "continued to come in."  Bowlby refused to identify the alleged complainers and would not provide any specific information. During the meeting, Bowlby also expressed frustration over Lenahan's efforts to learn who was complaining about her.

**39.**

On the morning of February 24, 2020, and without advance notice, Bowlby traveled to TFK Alpharetta ahead of Lenahan. When Lenahan arrived at the restaurant, Bowlby presented her with a severance agreement containing the terms of her discharge. The recent circumstances leading up to the 24th, including Bowlby's comments at the February 10 meeting, reasonably caused Lenahan to believe that she could be discharged. To respond to the threat of discharge, Lenahan had prepared a resignation letter. When Bowlby presented the severance agreement to Lenahan, she responded with the resignation notice.

**<u>Causes of Action</u>**

13

**Count I**
**Race Discrimination in Violation of Section 1981**

**40.**

Plaintiff incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

**41.**

Lenahan is Caucasian and a member of a protected class under Section 1981.

**42.**

At all times relevant to this action, the relationship between Lenahan and Defendant was a contractual relationship of "employee" to "employer."

**43.**

Defendant discriminated against Lenahan on the basis of race.

**44.**

Defendant's termination of Lenahan was a materially adverse employment action.

**45.**

Lenahan's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

**46.**

Lenahan was qualified to perform her duties as an employee of Defendant.

**47.**

Defendant's actions constitute unlawful race discrimination in violation of Title VII and Section 1981.

**48.**

Defendant has willfully and wantonly disregarded Lenahan's statutory rights and engaged in discrimination in bad faith.

**49.**

As a direct and proximate result of the above-described unlawful employment practices, Lenahan has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences, and mental anguish, for which she is entitled to recover damages.

**Count II**
**Race Harassment in Violation of Section 1981**

**50.**

Lenahan incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

15

**51.**

Lenahan's is a Caucasian female.

**52.**

At all times relevant to this action, the relationship between Lenahan and Defendant was a contractual relationship between employee and employer.

**53.**

At all times relevant to this action, Bowlby was an employee of Defendant. Furthermore, Bowlby was Lenahan's direct supervisor who had the authority to undertake and recommend tangible employment actions against Lenahan.

**54.**

Defendant subjected Lenahan to unwelcome racial harassment by exposing her to racially intimidating, offensive, and hostile work environment that unreasonably interfered with Plaintiff's work performance and opportunities.

**55.**

Defendant knew or should have known of the continuous harassment in the workplace but failed to take reasonable preventative or corrective measures with respect to the hostile work environment and the unlawful race-based treatment of Plaintiff.

**56.**

As a proximate and direct result of Defendant's conduct, Lenahan has suffered and will continue to suffer damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count III**
**Race Retaliation in Violation of Section 1981**

**57.**

Lenahan incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

**58.**

At all times relevant to this action, the relationship between Lenahan and Defendant was a contractual relationship between employee and employer.

**59.**

At all times relevant to this action, Bowlby was an employee of TFK and was Plaintiff's direct supervisor.

**60.**

Title VII and Section 1981 prohibit employer retaliation against an employee who reports or opposes harassment and discrimination based on race.

**61.**

Lenahan reported and complained to TFK's HR department the incidents of race-based conduct directed towards her.

**62.**

Lenahan reported and complained to TFK's HR department the offensive conduct and overriding atmosphere of race-based conduct that affected her performance.

**63.**

Defendant unlawfully retaliated against Lenahan by, among other things, refusing to address the complaints, refusing to identify persons who allegedly made false race-based claims against her, and, eventually, terminating Plaintiff's employment because she reported and complained to TFK's HR department the race-based conduct directed against her and the hostile and offensive race-based environment that interfered with her work.

**64.**

Defendant had knowledge of Lenahan's participation in protected activities.

**65.**

As a proximate and direct result of Defendant's conduct, Lenahan has suffered, and will continue to suffer, damages including emotional distress,

inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

## Count IV
## Georgia Negligent Supervision and Retention

### 66.

Lenahan incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

### 67.

Defendant TFK knew, or in the exercise of ordinary diligence, should have known of race-based conduct and harassment inflicted by TFK employees on Plaintiff.

### 68.

Defendant owed a duty to Lenahan to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

### 69.

Defendant breached the aforementioned duty by negligently supervising and retaining its employees who continued to engage in racially offensive and hostile conduct and therefore continued to expose Plaintiff to a hostile work environment. Further, Defendant ratified, condoned, or adopted race-based conduct and

harassment via inaction.

**70.**

Defendant acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Plaintiff and/or her federally protected rights. Additionally, and in the alternative, Defendant acted recklessly toward Plaintiff and/or her federally protected rights. Accordingly, Defendant is liable to Lenahan for negligent supervision and the injuries suffered by Plaintiff.

**71.**

As a proximate and direct result of Defendant's conduct, Lenahan has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

**Count V**
**Georgia Intentional Infliction of Emotional Distress**

**72.**

Lenahan incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

**73.**

Defendant TFK intentionally or recklessly engaged in extreme and outrageous conduct against Plaintiff.

**74.**

Defendant's conduct was so extreme in degree as to go beyond all possible bounds of decency and as to be regarded as atrocious and utterly intolerable in a civilized community.

**75.**

Lenahan suffered severe emotional distress as a result of Defendant's conduct.

**76.**

Defendant's extreme and outrageous conduct proximately caused Lenahan to suffer injury and damages.

**77.**

As a proximate and direct result of Defendant's conduct, Lenahan has suffered and will continue to suffer injury and damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

## Count VI
## Georgia Breach of Fiduciary Duty

**78.**

Lenahan incorporates by reference the Paragraphs 1 through 39 as if fully restated herein.

**79.**

At all times described herein, Lenahan relied on the fiduciary relationship which existed between Plaintiff and her employer TFK. As a result, Defendant owed to Lenahan a fiduciary duty and therefore was obligated to exercise its duty with the skill, prudence, and diligence of a fiduciary and to fulfill its responsibilities in a manner reflecting the trust and confidence reposed in a fiduciary.

**80.**

Defendant failed to perform and abide by the duties of a fiduciary and breached its duty of trust and performance owed to the Plaintiffs by, and as a result of, the acts and omissions alleged in this Complaint.

**81.**

As a proximate result of the breach of the Defendant's fiduciary obligations owed to Plaintiff, Lenahan has suffered injury and damages.

**82.**

As a proximate and direct result of Defendant's conduct, Lenahan has suffered and will continue to suffer injury and damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities for which she is entitled to recover damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

a.     a declaratory judgment that Defendant violated the Civil Rights Act of 1866, and Georgia tort laws of negligent retention, intentional infliction of emotional distress, and breach of fiduciary duty;

b.     a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the Civil Rights Act of 1866, and Georgia tort laws of negligent retention, intentional infliction of emotional distress, and breach of fiduciary duty;

c.     full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment;

d.      front pay to compensate Plaintiff for loss of earnings including future

wages, benefits and pension, and loss of earnings potential;

       e.      compensatory damages for Plaintiff's emotional distress, suffering,

inconvenience, mental anguish, loss of enjoyment of life and special damages;

       f.      punitive damages for Defendant's intentional violation of the Civil

Rights Act of 1866 and Georgia tort laws of negligent retention, intentional

infliction of emotional distress, and breach of fiduciary duty;

       g.      attorneys' fees, costs, and disbursements;

       h.      pre- and post-judgment interest as allowed by law; and

       i.      such further and additional relief as may be just and appropriate.

Respectfully submitted this 12th day of April 2022.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725

Stanford IO Law Group LLC
P.O. Box 19161
Atlanta, GA 31126
Telephone:  404-991-7300
Facsimile:  404-991-7299
rstanford@siolaw.com

## **CERTIFICATION OF TYPE FONT AND SIZE**

Pursuant to LR 7.1D, the undersigned hereby certifies that the foregoing is composed of Times New Roman, size 14, and is proportionately spaced.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725

25